## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| MITZI J. SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:23-cv-00434 |
| | ) | |
| SUMNER COUNTY BOARD OF | ) | JUDGE CAMPBELL |
| EDUCATION, | ) | MAGISTRATE JUDGE NEWBERN |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant Sumner County Board of Education's ("the Board")

motion for summary judgment. (Doc. No. 21). Plaintiff Mitzi Sanders ("Plaintiff") filed a response

in opposition (Doc. No. 24), and the Board filed a reply (Doc. No. 27). For the reasons discussed

below, the Board's motion for summary judgment will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Board operates public schools in Gallatin, Tennessee and has a Career and Technical

Education ("CTE") program, which is supervised by Chase Moore. (Doc. No. 21-5 at PageID #

213). Dr. Ron Becker is the principal of Gallatin High School. (Doc. No. 21-3 at PageID # 138,

154, 165; Doc. No. 21-4 at PageID # 177). Johnnie Anderson is the assistant principal of Gallatin

High School and oversees the CTE program. (Doc. No. 21-4 at PageID # 177). In March 2022, Dr.

Becker posted a job announcement for a new cosmetology teaching position at Gallatin High

School. (Doc. No. 21-3 at PageID # 141; Doc. No. 26-9 at PageID # 1517; Doc. No. 21-1 at PageID

# 92). Dr. Becker was responsible for hiring the new cosmetology teacher. (Doc. No. 21-3 at

PageID # 164).

Plaintiff currently works for the Board at Beech High School as the assistant director of daycare. (Doc. No. 21-2 at PageID # 104). In the spring of 2022, Plaintiff applied for the cosmetology teacher position. (Doc. No. 21-2 at PageID # 113). Plaintiff was 65 years old at the time she applied and interviewed for the position. (Doc. No. 21-2 at PageID # 110; Doc. No. 21-9).

Dr. Becker and Anderson interviewed Plaintiff on April 25, 2022. (Doc. No. 21-3 at PageID # 152). The parties agree that Dr. Becker told every candidate that he "wanted someone to stay long term to build the program like a coach would do." (Doc. No. 25 ¶ 13; Doc. No. 21-3 at PageID # 151). Plaintiff informed Dr. Becker and Anderson that she was in good health and had numerous years of experience and "no plans to retire." (Doc. No. 21-2 at PageID # 118-119). Plaintiff testified that in response to her statement that she had "no plans to retire", Dr. Becker "expressed the fact that it's kind of like a coach. You don't want to hire a coach knowing that they're only going to be there for the first year" and that it "was good to know that [Plaintiff] didn't have plans to retire anytime in the future." (Doc. No. 21-2 at PageID # 118-119). Age was not discussed during Plaintiff's interview. (*Id.* at PageID # 119).

Jennifer Grainger also interviewed for the cosmetology teacher position. (Doc. No. 21-3 at PageID # 159). After Dr. Becker and Anderson conducted the interviews, they agreed that Grainger and Teresa Dunn were the top two candidates. (Doc. No. 21-3 at PageID # 160; Doc. No. 21-1 at PageID # 92). Dr. Becker first offered the position to Dunn, but she declined. (Doc. No. 21-1 at PageID # 93; Doc. No. 21-3 at PageID # 162). Dr. Becker next offered the position to Grainger, and she accepted. (Doc. No. 21-3 at PageID # 164; Doc. No. 21-1 at PageID # 93; Doc. No. 21-4 at PageID # 193-194). Dr. Becker emailed Plaintiff on May 5, 2022, and informed her that she was not selected for the cosmetology teacher position. (Doc. No. 21-3 at PageID # 164).

2

Occupational teachers in the CTE program, including cosmetology teachers, are required have a practitioner occupational license to teach. (Doc. No. 21-3 at PageID # 148; Doc. No. 21-6 at PageID # 237, 261). At the time of the interviews, none of the candidates, including Plaintiff, had the required practitioner occupational license. (Doc. No. 21-3 at PageID # 149; Doc. No. 21-2 at PageID # 120; Doc. No. 21-6 at PageID # 262). Grainger obtained her practitioner occupational license on July 28, 2022. (Doc. No. 21-8 at PageID # 281, 283).

Plaintiff's daughter, Amber Cornell, is a cosmetology teacher at Beech High School. (Doc. No. 21-6 at PageID # 234). Cornell testified that in August 2022, during a meeting with the Board's cosmetology teachers, "Jennifer Grainger told us that she was not a licensed cosmetology instructor; that she was in school at Image Maker to in- -- get her license, her instructor license, but that she would not be finished with the program before -- she either said March or April of 2023 or April or May of 2023. And then she would still have to test for the State Board." (Doc. No. 21-6 at PageID # 243).

Cornell testified that she advised Plaintiff of Grainger's statements and that Plaintiff "was visibly upset that she was not even given a chance, and somebody that did not have a license to teach cosmetology was given the position. And that she could not believe that she had been looked over. And that's the first time she had said to me: It has to be an age thing. It has to be an age thing." (Doc. No. 21-6 at PageID # 263). Plaintiff testified that she believes she was not hired because of her age because "it's obvious I had much more experience and credentials than -- than Ms. Grainger. Ms. Grainger is approximately somewhere between 15 and 20 years younger than me. More like 21, 22 years younger…And it was such a slap in my face that they hired someone that was not licensed and had never taught or been an instructor and were giving her a brand new program to implement without any advice or help from anyone else… and I just felt like that it

3

was my age and that they looked at me as washed up, old, and outdated, and that they used me to get as much information as possible." (Doc. No. 21-2 at PageID # 136).

Plaintiff filed this lawsuit against the Board on May 1, 2023, asserting claims for failure-to-hire age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") and the Tennessee Human Rights Act ("THRA").

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary

judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## III.    ANALYSIS

The ADEA prohibits employers discriminating against individuals "because of such individual's age." 29 U.S.C. § 623(a)(1). The Sixth Circuit has explained that "[m]eeting this 'because of' requirement is no simple task." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir. 2021). "Plaintiffs must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Id.* To defeat summary judgment, a plaintiff "must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination." *Id.* at 324.

Where, as here, a plaintiff offers circumstantial evidence of discrimination, her claim is analyzed under the familiar *McDonnell Douglas* burden shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973)). This framework requires the plaintiff to establish a prima facie case of discrimination. *Id.* If she succeeds, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination. *Id.* Once the employer identifies a reason, the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext. *Id.* The ultimate inquiry is whether the evidence is "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.* (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)).

## A. *Prima Facie* Case

To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must show that: (1) she was a member of a protected group (older than 40 years old); (2) she was subjected to

an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See id.* at 326. The burden is "light," "easily met," and "not onerous." *Id.* (citing *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020)).[1]

Here, the Board concedes that Plaintiff has met her burden of establishing a *prima facie* case of age discrimination.

## B. Legitimate, Nondiscriminatory Reason

"Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant, who must 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "In satisfying that burden, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.' Instead, '[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (internal citations omitted).

The Board points to evidence that Grainger was a licensed cosmetologist and had experience working as a cosmetologist and teaching specialized classes and courses. (Doc. No. 21-8 at PageID # 281; Doc. No. 26-9 at PageID # 1533). There is also evidence in the record that Dr. Becker felt that Grainger was the best candidate for the position due to "her vision and the passion

---

[1]     The Sixth Circuit has recognized that "the same analysis [applies] to age-discrimination claims brought under the THRA as those brought under the ADEA." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006)(internal citations omitted).

6

that she shared for our students in the Gallatin community" as well as "her ability to collaborate and willingness to collaborate, her flexibility, her ability to relate....her plans to bring in the community and advertise and work hard at it and network the connections in the community." (Doc. No. 21-3 at PageID # 165).

Additionally, Anderson testified that his impression of Plaintiff was that he "wasn't sure if she was going to be a - - somebody who could have a vision or plan for our program...she - - I don't remember any presentation or any communication about a plan for student success in the program from her" while other candidates presented a vision and plan for student success in the program. (Doc. No. 21-4 at PageID # 189).

Accordingly, the Court finds that the Board has met its burden of demonstrating a legitimate, nondiscriminatory reason for not hiring Plaintiff, namely, that Dr. Becker chose to hire Grainger based on her experience and passion for the program. As the Board has set forth a legitimate, nondiscriminatory reason for failing to hire Plaintiff, the burden shifts back to Plaintiff to demonstrate that this legitimate, nondiscriminatory reason was pretext. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. at 248.

## C. Pretext

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted). The Sixth Circuit has also recognized that "in a failure-to-hire claim such as this, Plaintiff may prove pretext through the relative-qualifications test." *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, at *5 (6th Cir. Jan. 24, 2022) (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006)). "To

7

survive summary judgment under the relative-qualifications test, [Plaintiff] must present evidence demonstrating that either (1) he was the 'plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former,' or (2) he 'was as qualified [] if not better qualified' than [the selected applicant] and the record contains 'other probative evidence of discrimination.'" *Id.* (internal citations omitted); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citing *Bartlett v. Gates*, 421 Fed. Appx. 485, 490–91 (6th Cir.2010)).

1. Plainly Superior Candidate

"The Sixth Circuit has created an exceptionally high standard for satisfying the burden of proving a plaintiff is the plainly superior candidate." *Aday*, 2022 WL 203327, at *6. In order for Plaintiff to show that she was the "plainly superior candidate," she must "objectively demonstrate [her] superior qualifications." *Id.* "If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the others." *Id.* (citing *Bender*, 455 F.3d at 628). Moreover, "[i]n determining whether Plaintiff was the plainly superior candidate, the Court must avoid 'acting as a 'super personnel department,' overseeing and second-guessing employers' business decisions." *Id.* (internal citation omitted).

Here, Plaintiff contends that there are genuine issues of material fact as to whether the Board's justification for hiring Grainger instead of Plaintiff was pretextual. Plaintiff argues that the Board's "asserted reason for hiring Ms. Grainger and rejecting Plaintiff – *i.e.*, that Ms. Grainger was 'passionate' about its students and 'better suited' for the job based upon its one-time 'interview' of Grainger is so vague and subjective that it does not suffice to meet its burden of production." (Doc. No. 24 at PageID # 329). Plaintiff also contends that she "was infinitely more qualified" for the cosmetology instructor position than Grainger based on her experience as a

stylist and teacher within the industry. Plaintiff points to evidence that she is a licensed cosmetologist and cosmetology instructor and that she had over 17 years experience as a hairstylist at Castner Knott where she "trained and taught other hairstylists across the United States and Canada, and taught cosmetology to adults and high school students." (Doc. No. 24 at PageID # 330; Doc. No. 21-2 at PageID # 97, 98, 100, 102, 112-113; Doc. No. 26-1 at PageID # 1579). Plaintiff also points to evidence that she owned and operated her own salon in Sumner County and worked full-time at the salon until the Board hired her in 2018 as a resource assistant. (Doc. No. 21-2 at PageID # 101). Plaintiff contends that she taught hairstylists "how to be a Mitzi Sanders, how to build a clientele that would provide an income" and also taught students at Shear Perfection Beauty School in White House. (Doc. No. 21-2 at PageID # 98, 102). Plaintiff also points to evidence that she served as a substitute cosmetology teacher at Beech High School and implemented lesson plans, and demonstrated haircutting, manicures, and chemical applications. (Doc. No. 21-2 at PageID # 98-99). Plaintiff points to evidence that during her interview, she discussed her experience, ideas for recruitment, and her daughter's cosmetology class at a different high school in the district. (Doc. No. 21-2 at PageID # 119; Doc. No. 21-4 at PageID # 188-189).

The Board contends that it chose to hire Grainger over Plaintiff because Grainger "was passionate about the GHS students and she was better suited for GHS." (Doc. No. 23 at PageID # 307). Specifically, Dr. Becker and Anderson agreed that Grainger outranked Plaintiff because of how passionate she was about the students, that she would be able to relate with the students, and that she, after Dunn, was the best person for the cosmetology program. (Doc. No. 21-3 at PageID # 165; Doc. No. 21-1 at PageID # 93; Doc. No. 21-4 at PageID # 201-203). Dr. Becker also testified that Portland High School was "known to be the best cosmetology program in the county" and that Grainger was "very willing to work closely with Portland" and "her vision and the passion that she

9

shared for the program, the passion that she shared for our students in the Gallatin community, and her plan within the community, her ability in my opinion to relate to the students much better than other applicants, and to work best with them and collaborate with - - we wanted our program to be the best in the county" and Grainger had "plans to bring in the community and advertise and work hard at it and network the connections in the community." (Doc. No. 21-3 at PageID # 165). Dr. Becker also testified that Grainger's "ability to collaborate and willingness to collaborate, her flexibility, her ability to relate…her vision for - - inside the community and how she could involve the kids, her love that she shared that - - for the Gallatin kids, just outweighed and was the decision makers [sic]." (Doc. No. 21-3 at PageID # 165; Doc. No. 21-1 at PageID # 93).

The Board also points to evidence that Grainger had experience as a licensed cosmetologist, teaching specialized classes, and running multiple businesses. (*See generally* Doc. No. 21-8). Specifically, Grainger had experience teaching specialized classes at Image Maker Beauty Institute on makeup application, Brazilian blowouts, and how to launch a business. (Doc. No. 21-8 at PageID # 281). Grainger also had experience as a salesperson for a cosmetics company and owned her own storefront providing makeup services to customers. (Doc. No. 21-8 at PageID # 280). During her interview, Grainger presented ideas to expand the cosmetology program, including adding a barber and advertising to and networking with community members. (Doc. No. 21-4 at PageID # 190; Doc. No. 21-3 at PageID # 165; Doc. No. 21-1 at PageID # 93)).

Accordingly, Plaintiff has not put forth evidence sufficient to show that a reasonable juror would conclude that she was the plainly superior candidate. *Aday*, 2022 WL 203327, at *6 ("Simply being 'more qualified' is not sufficient to prove Plaintiff is the plainly superior candidate.").

2.  As Qualified With Other Probative Evidence

Plaintiff may also prove pretext by showing that she was as qualified as Grainger and that the record contains other probative evidence of discrimination. *Aday*, 2022 WL 203327, at *9.

The record contains ample evidence that a reasonable juror could conclude that Plaintiff was as qualified as Grainger. As detailed above, Plaintiff points to evidence of her extensive experience as a hairstylist, teaching adult and high school students, running her own business, and as a substitute teacher. The record also establishes that Plaintiff brought "detailed cosmetology lesson plans" and "extensive curriculum" at her interview and discussed her "five- year, maybe 10-year type outlook for the new program." (Doc. No. 21-2 at PageID # 112; Doc. No. 21-3 at PageID # 151). Accordingly, the Court finds that Plaintiff has created a genuine dispute as to whether she was "as qualified" as Grainger.

However, the Court's analysis does not end there. Plaintiff must also show that the record contains "other probative evidence of discrimination." *Aday*, 2022 WL 203327, at *9. In support of this, Plaintiff points to evidence that during her interview, she "explained to [Dr. Becker and Anderson] that I was in good health, and I had numerous years of experience, and I had no plans to retire…[a]nd [Dr. Becker] was - - he expressed the fact that it's kind of like a coach. You don't want to hire a coach knowing that they're only going to be there for the first year" and that Dr. Becker commented "that was good to know that I didn't have plans to retire anytime in the future." (Doc. No. 21-2 at PageID # 118-119). Plaintiff testified that when Dr. Becker notified her that she did not get the position, he requested to keep her resume on file for an additional three months "should this candidate not pan out or work" and that Dr. Becker informed her that the decision "had nothing to do with [her]" and that "they had just chosen to take the program in a different direction." (Doc. No. 21-2 at PageID # 131).

11

Plaintiff also testified that she believes the Board wanted "younger" people for its cosmetology instructor positions and that Connie Moyher, a cosmetology professor at another school in the district, told Plaintiff that she "probably would not get [Connie's job] because they're always looking for younger people…that are going to stay, be there for a while." (Doc. No. 21-2 at PageID # 135). However, the Board points to evidence that Moyher "does not remember…having any conversation" with Plaintiff about Moyher's retirement and that Moyher "didn't say" to Plaintiff that the Board only looks to hire younger people in the cosmetology teacher positions. (Doc. No. 26-6 at PageID # 1284, 1286). The Board also points to evidence that Moyher does not believe "that [Sumner County Schools] look for --- for younger people to fill" available cosmetology positions. (*Id.* at PageID # 1285). Plaintiff also contends that she has applied for various cosmetology teacher positions with the Board in 2021, 2022, and 2024, which she has been denied in favor of younger individuals. (Doc. No. 24 at PageID # 333).

The Court finds that whether the Board wanted a "younger" individual to fill the cosmetology teacher position is disputed and involves a credibility determination that must be left to the jury. The Court also finds that there are disputed issues of fact as to whether the Board's failure to hire Plaintiff was pretextual. Moreover, while a jury could very well believe that the Board chose not to hire Plaintiff for non-discriminatory reasons, Plaintiff has proffered evidence from which a reasonable juror could conclude that the Board failed to hire Plaintiff because of her age.

Accordingly, viewing the facts in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists as to the issue of pretext, and summary judgment will be denied as to Plaintiff's discrimination claims.

## IV.    CONCLUSION

For the reasons stated, the Board's motion for summary judgment (Doc. No. 21) will be

**DENIED**.

An appropriate Order shall enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

13